The Chief

Justice delivered the Opinion of the Court.
Miller having obtained a judgment for damages, for an alleged breach of covenant by Johnson, for a conveyance of the legal title to seven lots adjoining the town of Cynthiana—the latter, in a suit in chancery afterwards instituted, procured a decree for a specific execution, and for a perpetual injunction.
As Johnson’s title was indisputable at the date of the decree, and Miller occupied the lots without disturbance or question, and never either sought a conveyance or seemed willing to incur the expense of paying for writing it, as he had undertaken to do—there can be no doubt that there could be no objection to the decree, had he not obtained a judgment for damages before the bill was filed.
And we are of the opinion that, the facts of this case bring it within a just and established exception to the general rule, that a vendor comes too late for a specific execution after judgment against him for damages for a breach of his covenant to convey. The rule applies inflexibly to only such judgments as had been “fairly” obtained. A judgment for damages whereby the contract is virtually rescinded, should not be deemed to have been fairly obtained, if, when rendered, the vendee was clearly under a strong equitable obligation to forbear seeking a rescission in that mode, and had voluntarily disabled himself from restoring the land substantially as it was when he obtained possession of it.
*49 In this case, the judgment was, in our opinion, unfairly sought and obtained; because Miller’s conduct lulled Johnson, who would, we believe, have been willing to have assured a good title at any time, had he known that it was desired by Miller; who had said, before and after the time stipulated for the conveyance, that Johnson’s title was good, and that, expecting at some future day, to sell the lots, he would prefer the title bond to a conveyance with its incidental cost, and who had sold one of the lots, and had nearly destroyed the value of three of the others, by abstracting the soil and clay in the manufacture of bricks; and, therefore, could not restore the one half of what he had bought, and, for more than twelve years, occupied and used, without ever having been subjected to any peril, inconvenience or loss, concerning the title. Under such circumstances, it was unreasonable and unfair to attempt, by surprise, to take a technical advantage, and thus compel Johnson, at so late a period, to pay to him a sum more than equal to the present value of the lots ten times told, and to take back property which has been changed essentially, and almost destroyed, by his own long and profitable use and conversion of it.
We, therefore, approve the principal decree.
Nor do we disapprove the incidental decree, enjoining the costs of the action at law, because the action was commenced for an unjust purpose, and when fairness, reciprocity, and conscience forbid it.
Wherefore, the entire decree as rendered, is affirmed.